**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID LEE FARRIS,

      Petitioner,                           Civil No. 2:19-CV-10265
                                             HONORABLE SEAN F. COX
v.                                    UNITED STATES DISTRICT JUDGE

WILLIS CHAPMAN,

      Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

David Lee Farris, ("petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(b)(ii), and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Macomb County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the victim's allegations that defendant, her stepfather, sexually assaulted her when she was 15 years old. On May 8, 2013, the victim's mother was out of town and defendant entered the victim's room in the late evening. He was not wearing any clothing, had a jacket covering his penis, and was carrying candy and what appeared to be a gun. Defendant held the object that resembled a gun to the victim's head and told her to shut up. Defendant took the victim to the basement and ordered her to remove her clothing. He told the victim to lie down

and he licked the victim's vagina and touched her breasts. He then ordered the victim to get on her knees and suck his penis, and the victim complied. Afterwards, defendant gave the victim a pill and told her to swallow it with beer, but the victim hid the pill in her mouth and put it in the couch when defendant was not looking. She later put the pill in a makeup case in her room. The victim asked defendant whether he had ever done the same thing to his older daughters, and defendant said that he had and "they loved him for doing that to them." Defendant was smoking something out of a pipe. He eventually allowed the victim to go upstairs to her room.

Later that night, defendant again came into the victim's room. Defendant was naked and he got on top of the victim and started choking her. He told the victim to get on her knees and take off her clothing. Defendant said that he was going to take the victim's virginity, and he tried to use a condom, but the victim said that she would "rather just do what happened in the basement." Defendant then told the victim to get on her knees, and after she removed her clothing, he told her to suck his penis again. Defendant ejaculated in the victim's mouth and she spit out the semen next to her bed.

The next morning, the victim got herself and her younger sisters ready for school. The victim did not tell anyone at school what had happened. After school, she called her mother, but did not tell her what had happened. The victim called her grandmother and two of her cousins and told them what happened, but no one came to help her. The victim then went home and packed clothes for herself and her sisters. She went to a neighbor's house and asked if she could go inside because she did not know if defendant was coming home, but the neighbor would not let her inside of his house, so the victim called the police from outside. The neighbor testified that the victim appeared agitated and nervous, and she said that she had been sexually abused by her stepfather the night before. The neighbor did not observe any physical injuries to the victim.

After the police arrived, the victim told them what had happened and let them inside her house. The victim directed the police to the area where she spit out the semen; the victim later told the police about a gray shirt that defendant had used to wipe himself and the floor.

Officer Brett Mosher, of the Centerline Police Department, was dispatched to the victim's location. The victim was crying, upset, and scared. Officer Mosher observed cuts on the inside of the victim's lip. The victim took Officer Mosher to her house, and he entered in order to see if the suspect was there and to secure the residence for any evidence. After a search warrant was obtained, the evidence was collected.

The victim was taken to be examined by a Sexual Assault Nurse Examiner (SANE). Marnie Vandam examined the victim. The victim recalled telling the nurse that she felt little cuts on the inside of her mouth and her neck hurt from being choked.

Vandam did not observe any physical injuries on the victim, including her lips and mouth, but she had areas of tenderness on her neck, throat, chest, arms, and back. Vandam swabbed the victim's mouth, vagina, anus, and breasts, and flossed her teeth.

Sergeant William Dempsey, of the Centerline Police Department, took pictures and collected evidence from the victim's house. Sergeant Dempsey collected the makeup compact and the pill inside of it, which was identified as Seroquel; the pill did not appear to be fresh. He also collected an area of the carpet where the victim said that she spit out the semen, a pack of Seroquel pills with one missing, a lighter that resembled a gun, packs of Seroquel prescribed to defendant, and a gray shirt that the victim said defendant had used to wipe himself and the floor.

Jodi Corsi, a forensic scientist with the Michigan State Police, processed the evidence that was collected in this case for the presence of bodily fluids. She testified that the victim's vaginal swabs were negative for saliva, and the victim's oral swabs were negative for sperm cells, but two sperm cells were found on the dental floss. In order to extract DNA from sperm cells, generally 30 to 100 sperm cells are required. Seminal fluid and sperm cells were also found on the gray shirt. The carpet sample also tested positive for saliva and seminal fluid.

Jennifer Morgan, also a forensic scientist with the Michigan State Police, processed the DNA in this case and testified that the DNA profile from the sperm on the gray shirt and the tan carpet matched defendant's DNA type. The victim also could not be excluded as a donor of the DNA found on the carpet. Morgan was unable to produce a DNA type from the sperm on the dental floss because of the minimal amount of male DNA. Morgan testified that only the victim's DNA was detected on the dental floss, so defendant was excluded as the donor, as all males were excluded. Morgan was unable to say that defendant's sperm was not on the dental floss.

Defendant was arrested on May 18, 2013. Mark O'Riordan, a United States Secret Service agent, conducted a forensic interview with defendant.[1] Defendant initially stated that he had no sexual contact with the victim, but later in the interview stated that he had woken up on the couch to the victim putting his penis in her mouth and he stopped her. O'Riordan testified that he is not permitted by the policies of the Secret Service to videotape or audio record interviews. O'Riordan testified that he informed defendant that he could not videotape the interview and defendant agreed to continue the interview.

*People v. Farris,* No. 324324, 2016 WL 1125920, at *1–3 (Mich. Ct. App. Mar. 22, 2016).

---

[1] Although not disclosed to the jury, O'Riordan administered a polygraph examination to defendant. (Footnote original).

Petitioner's conviction was affirmed but the case was remanded to the trial court pursuant to *People v. Lockridge*, 498 Mich. 358, 398, 870 N.W.2d 502 (2015), which had invalidated Michigan's Sentencing Guidelines, for the judge to determine whether or not he would have imposed the same sentence even without the sentencing guidelines. *Id.; lv. den.* 500 Mich. 896, 887 N.W.2d 191 (2016).

On remand, the trial court judge issued an order denying petitioner resentencing because he would not have imposed a materially different sentence absent the unconstitutional restraint on its sentencing discretion. *People v. Farris*, No. 2014-0433-FC (Macomb County Cir. Ct. March 2, 2017)(ECF No. 1, PageID.67-69). The judge's decision was affirmed. *People v. Farris*, No. 337821, 2018 WL 2746344 (Mich. Ct. App. June 7, 2018), *lv. den.* 503 Mich. 931, 920 N.W.2d 606 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Based on the totality of circumstances, the highly incriminating and prejudicial statements elicited from Mr. Farris after being transferred to the custody of a secret service agent for a purported polygraph examination were involuntary and violated his right to counsel, right against self-incrimination and right to due process of law. The evidence adduced at the *Walker* hearing shows that the prosecution failed to meet its burden of proving that Mr. Farris had waived his right to counsel and voluntarily made the alleged statements. The trial court compounded the error by prohibiting defense counsel from eliciting testimony at trial about the circumstances surrounding the alleged statements and refusing a jury instruction that law enforcement failure to preserve evidence creates an adverse inference.

II. The trial court abused its discretion and deprived Mr. Farris of a fair trial and due process of law, as well as his Sixth Amendment right to cross-examination, by denying a motion for mistrial and admitting, over objection, testimony regarding other alleged sexual assaults on his daughters, which were irrelevant, inadmissible as "prior bad acts" under MRE 404(b) and unfairly prejudicial.

III. The trial court denied Mr. Farris the right to provide proof from untested sperm on dental floss and from the scene, including sperm that was allegedly on the floor, that he was excluded from the donor profile and was

therefore innocent of these charges, violating his right to introduce evidence and cross-examine witnesses, and violating the principle of completeness.

IV. Defendant was deprived of the effective assistance of counsel in violation of the Sixth Amendment through a series of serious acts and omissions and big mistakes by defense counsel in pretrial proceedings.

V. The trial court prejudicially erred in its jury instructions that the complaining witness's testimony need not have been corroborated, and that the law enforcement officer "should" make a recording, rather than "shall" make a recording, of an interrogation. Cumulatively, the two instructions had the effect of unfairly bolstering the credibility of the prosecution's two "star" witnesses, depriving Mr. Farris of due process of law.

VI. The trial court erred in denying Mr. Farris' motion to suppress the evidence seized from the search of his home, which was conducted without a warrant or exigent circumstances.

VII. The trial court reversibly erred in failing to dismiss this case for violation of Defendant's right to speedy trial because 450 of the total 473 days Mr. Farris suffered in jail awaiting trial were attributable to the prosecution or to court-ordered adjournments.

VIII. The trial court improperly scored the offense variables 1, 3, 11 and 12 resulting in an incorrect guidelines range. The court's determination of Mr. Farris's minimum sentence based on disputed facts that the prosecutor did not prove beyond a reasonable doubt to a jury also violated Mr. Farris Sixth and Fourteenth Amendment rights.

IX. The trial court abused its discretion by preventing Mr. Farris from demonstrating that although he had a sexually transmitted disease which would likely have been transmitted to the complaining witness if there had been sexual penetration, the complaining witness never contracted it. Because that evidence would have demonstrated that it was unlikely that he had had any sexual contact with the complainant, the trial court's ruling deprived Mr. Farris of the constitutional rights to produce evidence, to cross-examine, and to a fair trial.

X. The examining magistrate clearly and prejudicially erred and denied Mr. Farris his due process and statutory rights to a timely preliminary examination, repeatedly adjourning the exam date while prosecution attempted to procure the testimony of the complaining witness and increase the number and seriousness of the charges. The magistrate held the exam only after the prosecutor was able to produce the witness. By then, eight months had elapsed, and the magistrate amended the two-count complaint

for third degree criminal sexual conduct to three counts of CSC first, relationship, and bound him over.

XI.    Michigan law and the Due Process Clauses of the Michigan and United States constitutions require sufficient evidence to convict a person of a criminal offense. There was insufficient evidence that Mr. Farris had committed any of the charged offenses.

XII.   The trial court abused its discretion and deprived Mr. Farris due process of law in denying his motion for a photo body lineup.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

      (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

#### A. Claim # 1. The confession claims.

Petitioner first argues that the statements that he made to Agent O'Riordan after the polygraph examination were involuntary and that petitioner did not voluntarily waive his Fifth Amendment rights. Petitioner also argues that his statement should have been suppressed because it was not recorded.

The Michigan Court of Appeals first found that petitioner's statement was voluntary:

> The record shows that defendant was approximately 47 years of age, did not demonstrate a lack of intelligence, had previous experience with the police, was not ill or intoxicated, and was not deprived of food, sleep, or medical attention. Although the interrogation lasted several hours and defendant did not make the statements in question until near the end, defendant was not abused or threatened with abuse and he was informed of his constitutional rights. There is no evidence of the psychological abuse alleged by defendant. O'Riordan testified that he did not coerce defendant. Under the totality of the circumstances, the trial court did not err by determining that defendant's statements were voluntarily made.

*People v. Farris*, 2016 WL 1125920, at *8.

The Michigan Court of Appeals further held that petitioner had knowingly and voluntarily waived his Fifth Amendment rights:

> Although defendant was not specifically informed that anything he might say after the polygraph examination could be used against him and defendant did not sign a waiver expressly extending to the post-examination interview, the totality of the circumstances establish that defendant's waiver was knowing and voluntary and extended to the post-polygraph examination. At the start, O'Riordan informed defendant of his *Miranda* rights, including that anything he said could be used against him in a court or other proceeding, and defendant initialed a form stating that he voluntarily waived those rights and agreed to answer questions. O'Riordan testified that he went through each step of the process—pre-polygraph interview, polygraph examination, and post-polygraph interview—with defendant before proceeding. Although O'Riordan did not again advise defendant of his rights after the polygraph examination, defendant never indicated that he wished to stop the interview. And, while defendant testified that he requested his attorney, O'Riordan testified that defendant waived the presence of counsel. The trial court apparently found O'Riordan's testimony to be more credible than that of defendant, and we defer to the trial court's credibility determinations. Under these circumstances, the trial court did not err in determining that defendant's waiver was knowing and voluntary.

*Id.*, *8.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Likewise, whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. On federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence. *Williams*

*v. Jones,* 117 F. App'x 406, 412 (6th Cir. 2004); *see also Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

In determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, without coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. at 167.

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that petitioner's statement to the police was voluntary. *See McCalvin v. Yukins,* 444 F.3d 713, 720 (6th Cir. 2006). Petitioner was advised of his *Miranda* rights. Petitioner was 47 years old. Petitioner was not denied food, water, or sleep during the interview. There were no allegations of physical or psychological abuse. Under the deference required by the AEDPA, and given the factors supporting a finding that petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding petitioner's confession to have been voluntary was a reasonable application of federal law. *McCalvin,* 444 F.3d at 720.

The mere fact that petitioner was not readvised of his *Miranda* rights after taking the polygraph examination would not render his statement inadmissible.

In *Wyrick v. Fields,* 459 U.S. 42 (1982), the U.S. Supreme Court held that once a criminal defendant, who had an attorney, made a voluntary, knowing, and intelligent waiver of his right to have counsel present at a polygraph examination, and it was clear that the defendant understood his right to counsel and was aware of his power to stop questioning at any time or to confer with his attorney at any time, the federal constitution did not require that the police advise the defendant of his rights again before questioning him at the same interrogation about the results of the polygraph examination. The Supreme Court ruled that by requesting a polygraph examination from the police, the defendant in *Wyrick* had initiated the interrogation with the police and had waived not only his right to be free of any contact with law enforcement authorities in the absence of an attorney, but also his right to be free of interrogation about the crime of which he was suspected. *Id.* at 47. The Supreme Court further concluded that the defendant validly waived his right to have counsel present at any post-polygraph questioning, "unless the circumstances

changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.*

In the present case, petitioner was advised of his *Miranda* rights and his polygraph examination rights prior to the polygraph examination. By asking to take a polygraph examination, petitioner consented to questioning by the police and waived not only his right to be free from contact with law enforcement authorities in the absence of his attorney, but also his right to be free of interrogation about the crimes that he was suspected of committing. *See United States v. Bad Hand*, 926 F. Supp. 891, 903 (D.S.D. 1996). It is plain from the record that petitioner fully understood and expressly waived his constitutional rights prior to the polygraph examination and the subsequent post-polygraph interview. Petitioner therefore voluntarily, intelligently, knowingly, and intentionally gave up both his Fifth and Sixth Amendment rights during the polygraph examination and subsequent interview. *Id.*

Moreover, in "cases where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial[,]" a harmless error analysis applies. *See Mitzel v. Tate,* 267 F.3d 524, 534 (6th Cir. 2001)(quoting *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)). Assuming that petitioner's Sixth Amendment rights were violated by counsel's absence from the polygraph examination, habeas relief is unavailable unless there is more than a reasonable possibility that the admission of petitioner's post-polygraph confession contributed to the jury's guilty verdict. *Id.* In light of the overwhelming evidence of petitioner's guilt, this Court does not believe that there is anything more than a possibility that the admission of petitioner's post-polygraph confession contributed to the jury's decision to convict. *Id.* at 535.

Finally, petitioner is not entitled to habeas relief on his claim that his statement should have been suppressed because it was not recorded. Federal law does not require that police

interrogations of suspects must be audio or videotaped in order for the statements to be admissible. *See Brown v. McKee,* 231 F. App'x 469, 475 (6th Cir. 2007); *Crenshaw v. Renico,* 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The cross-examination/mistrial claim.**

Petitioner raises two unrelated issues in his second claim.

Petitioner first argues that his right to confrontation was violated because the trial judge limited defense counsel in his cross-examination of O'Riordan concerning the circumstances and context of the polygraph examination, claiming that such questions would have "revealed O'Riordan's history and background as an experienced manipulator used by police departments to turn the ploy of a 'polygraph examination' into as [sic] a method of obtaining purported admissions." The Michigan Court of Appeals held that the trial judge did not err in limiting defense counsel's cross-examination on these issues "because evidence relating to a polygraph examination is inadmissible." *People v. Farris*, 2016 WL 1125920, at *10.

The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish. *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal citations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Moreover, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent,

privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996)(quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

Evidence or results of a polygraph examination are inadmissible under Michigan law. *See Amunga v. Jones,* 51 F. App'x 532, 540 (6th Cir. 2002)(citing *People v. Ray*, 431 Mich. 260, 430 N.W.2d 626 (1988); *People v. Nash*, 244 Mich. App. 93, 625 N.W.2d 87 (2000)(per curiam). Because evidence that petitioner had taken a polygraph was inadmissible, the judge did not violate petitioner's right to confrontation by not permitting defense counsel to ask O'Riordan background questions about petitioner's polygraph examination or other polygraph examinations that O'Riordan had performed.

Petitioner also claims that the judge erred in refusing to grant a mistrial after the victim testified that petitioner had admitted to sexually assaulting his daughters.

The Michigan Court of Appeals agreed that it was error to admit this evidence but found the error to be harmless:

> In this case, the evidence of the defendant's guilt was overwhelming. In addition to the victim's testimony, which was alone sufficient to support the jury's verdict, see MCL 750.520h, there was physical evidence at the scene of crime that corroborated the victim's testimony, including the lighter that resembled a gun, pills, and the pill in the victim's makeup compact. Defendant's DNA was also found on the carpet, along with the victim's DNA, and on the gray shirt, which the victim testified that defendant used to wipe himself and the floor. Defendant also admitted that he woke up to the victim putting his penis in her mouth. Given the evidence against him, defendant was not denied a fair trial by the admission of the victim's testimony regarding his other acts.

*People v. Farris*, 2016 WL 1125920, at *12.

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court

held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief should be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Petitioner seeks federal habeas corpus relief and must meet the *Brecht* standard, but that does not mean "that a state court's harmlessness determination has no significance under *Brecht*." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Where a state court uses the *Chapman* standard to determine that an error was harmless beyond a reasonable doubt, a federal court cannot grant habeas relief unless the state court applied the *Chapman* harmless error standard in an objectively unreasonable manner. *Id.* at 2198-99.

This Court agrees with the Michigan Court of Appeals' determination that the evidence of petitioner's guilt was overwhelming. Accordingly, the Michigan Court of Appeals reasonably concluded that the failure to declare a mistrial based on the erroneous admission of petitioner's sexual assaults was harmless error. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The DNA testing claim.

Petitioner next claims that the judge violated his right to introduce evidence when he refused petitioner's request at sentencing to conduct additional DNA testing on the sperm found

on the dental floss and on the floor. At sentencing, petitioner's counsel filed a motion for additional scientific testing of the sperm samples in the dental floss, which the trial court denied after hearing the testimony of the experts at trial. (ECF No. 9-27, PageID.1713).

A state prisoner does not have a freestanding substantive due process right to DNA testing after he has been convicted. *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72-74 (2009). The state trial judge's refusal to order post-trial testing of the DNA evidence does not entitle petitioner to relief.

Petitioner also claims that the DNA evidence was inadmissible as being scientifically unreliable. Petitioner bases his claim on the United States Supreme Court case of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). However, the Supreme Court's holding in *Daubert* involves the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir. 1998); *see also Anderson v. Jackson*, 567 F. Supp. 2d 973, 983 (E.D. Mich. 2008)(*Daubert* decision concerning the admission of expert testimony was concerned with the Federal Rules of Evidence and, thus, did not apply to state criminal proceedings). Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The ineffective assistance of trial counsel claims.

Petitioner next contends that he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the

petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner alleges that his attorney, Azhar Sheikh, was ineffective in (1) failing to advise him not to attend the polygraph examination or make statements without counsel, (2) failing to inform him that the process would consist of three parts of interrogation, (3) failing to request that the polygraph examination be recorded, (4) failing to review the proposed questions to be asked, (5) failing to attend the polygraph examination/interview, (6) failing to obtain a comprehensive testing of all defendant's STDs, and (7) failing to ensure the preservation of all DNA/sperm evidence.

The Michigan Court of Appeals found that Mr. Sheikh had not been ineffective with respect to the polygraph examination as follows:

> With regard to defendant's claims that Sheikh failed to advise him not to attend the polygraph examination, failed to advise him not to make statements, and failed to attend the polygraph examination, defendant and Sheikh gave conflicting testimony. Defendant testified that Sheikh never discussed the polygraph examination with him and said that he would be at the examination. He also testified that he asked for his attorney during the examination. Sheikh, however, testified that he discussed defendant's rights with him before the polygraph examination, he advised defendant not to make a statement, defendant knew Sheikh would not be present, and defendant insisted on taking the polygraph examination. O'Riordan testified that defendant waived his right to an attorney. Even if Sheikh's performance fell below an objective standard of reasonableness, defendant fails to establish prejudice because he knowingly and voluntarily waived his rights and submitted to the polygraph examination.
>
> With regard to defendant's claim that Sheikh failed to tell him that the interview would be three parts, failed to review the questions to be asked, and failed to request that the interrogation be recorded, defendant also fails to establish prejudice. The record established that O'Riordan explained the process to defendant, reviewed the questions to be asked, and told defendant he could ask to stop at any time. O'Riordan also testified that defendant agreed to the interview not being recorded. And, even if Sheikh had requested that the interrogation be recorded, there is no evidence that the police would have done so.

*People v. Farris*, 2016 WL 1125920, at *14.

Petitioner's primary claim is that Mr. Sheikh was ineffective for permitting petitioner to take a polygraph examination in the first place. Mich. Comp. Laws § 776.21(5) states that a defendant who is charged with first or second-degree criminal sexual conduct or several other sex offenses shall be given a polygraph examination or lie detector test if he requests one. Mich. Comp. Laws § 776.21 (3) states that a law enforcement officer shall inform the victim of a sexual assault if a defendant has voluntarily submitted to a polygraphic examination or lie detector test and the test indicates that the defendant may not have committed the crime. The Michigan Court of Appeals has commented that "[T]he purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial." *People v. Phillips*, 251 Mich. App. 100, 107; 649 N.W.2d 407 (2002). If trial counsel had told petitioner to take a polygraph examination, which he did not, petitioner cannot show that counsel's strategy of having petitioner take a polygraph examination, in the hopes that it might lead to the dismissal of the criminal charges against him, would have been an unreasonable strategy. *See e.g. Lollar v. Cockrell,* 77 F. App'x 701, 705 (5th Cir. 2003); *cert. den. sub nom Lollar v. Dretke,* 124 S. Ct. 2842 (2004); *reh den.* 125 S. Ct. 19 (2004)(state court determination that counsel's strategy of having defendant take a polygraph in an effort to avoid indictment was not ineffective assistance of counsel was not an unreasonable application of clearly established federal law, precluding habeas relief). ).

Furthermore, the Michigan Court of Appeals rejected petitioner's related claims by noting that Mr. Sheikh testified that he explained petitioner's rights to him before the polygraph examination, he advised petitioner not to make a statement, informed petitioner that Sheikh would not be present, yet petitioner insisted on taking the polygraph examination. While the ultimate

17

question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness in federal habeas proceedings. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000). This is particularly so where credibility determinations are involved. *See e.g. Mix v. Robinson,* 64 F. App'x 952, 956 (6th Cir. 2003). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x 379, 387 (6th Cir. 2012). In order to overturn this presumption of correctness, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini,* 659 F.2d 730, 736 (6th Cir. 1981). The Michigan Court of Appeals chose to credit Mr. Sheikh's testimony that he had advised petitioner of his rights, admonished petitioner not to make an incriminating statement, and had informed petitioner that he would not be present at the polygraph. Petitioner presented no evidence to this Court to rebut the Michigan Court of Appeals' factual finding that Mr. Sheikh had properly advised petitioner concerning his various rights in connection with the polygraph examination and had thus provided petitioner with the effective assistance of counsel.

Petitioner also claims that Mr. Sheikh was ineffective for failing to move for petitioner to be tested for Sexually Transmitted Diseases (STDs) and failed to move to preserve the evidence. The Michigan Court of Appeals rejected these claims because one of petitioner's subsequent attorneys filed these motions. *People v. Farris*, 2016 WL 1125920, at *14–15. Petitioner was not denied the effective assistance of counsel by Mr. Sheikh's failure to file these two motions when his replacement counsel did, in fact, file these motions. *See United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014). Petitioner is not entitled to habeas relief on his fourth claim.

**E. Claim # 5. The jury instruction claims.**

Petitioner next claims that he is entitled to habeas relief because of instructional error.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

Petitioner first claims that the judge erroneously instructed the jurors that the victim's testimony did not need to be corroborated. The Michigan Court of Appeals rejected this claim, because under Michigan law, a sexual assault victim's testimony does not need to be corroborated. *People v. Farris*, 2016 WL 1125920, at *15. Because the Michigan Court of Appeals found that the instruction given by the trial court accurately reflected Michigan law, this Court must defer to that determination and cannot question it. *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000).

Petitioner next claims that the trial court erred in instructing the jurors that the law enforcement officials "should have" audiotaped or videotaped the interrogation, arguing that the judge should have instead used the word "shall." The Michigan Court of Appeals rejected this claim, noting that "should" is the past tense of the word "shall," thus, the instruction adequately conveyed to the jurors that the interrogation should have been recorded. *People v. Farris*, 2016

WL 1125920, at *15.  This Court agrees that the instruction as a whole adequately advised the jurors that under Michigan law the interrogation should have been recorded.  Petitioner is not entitled to relief on his fifth claim.

### F.  Claim # 6.  The Fourth Amendment claim.

Petitioner claims that he is entitled to relief because the judge failed to suppress evidence that he claims was seized in violation of the Fourth Amendment.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)).  Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue

which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994)).

Petitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress. Petitioner was later able to present his Fourth Amendment claim to the Michigan appellate courts. That is sufficient to preclude review of the claim on habeas review. *Good v. Berghuis,* 729 F.3d 636,640 (6th Cir. 2013).

### G. Claim # 7. The speedy trial claim.

Petitioner argues he was denied his right to a speedy trial. Petitioner was arrested in May of 2013, but not brought to trial until September of 2014.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon,* 556 U.S. 81, 89 (2009)(quoting *Barker*, 407 U.S., at 522)(quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52

(1992). Courts have generally found post accusation delays that approach one year to be "presumptively prejudicial." *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000). Petitioner was arrested in May of 2013 and brought to trial over one year and four months later in September of 2014. Because this delay between petitioner's arrest and trial is presumptively prejudicial, this Court must engage in an examination of the remaining *Barker* factors. *See U.S. v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005)(citing *Doggett*, 505 U.S. at 651). When evaluating a speedy trial claim, delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon,* 556 U.S. at 90; *see also U.S. v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007).

Most of the delays in this case were attributable to petitioner. The Court first notes that petitioner went through six different attorneys after expressing his dissatisfaction with his various trial counsels. Petitioner's continued requests for the appointment of new counsel is attributable to the defense, for speedy trial purposes. *See United States v. Brown*, 498 F.3d at 531.

Likewise, any delays caused by petitioner's filing of his numerous pre-trial motions is attributable to the defense, for purposes of a speedy trial determination. *See Norris v. Schotten,* 146 F.3d at 327. The need to conduct an evidentiary hearing on petitioner's motion to suppress is also a delay that would be attributable to petitioner. *See United States v. Kaylor,* 877 F.2d 658, 663 (8th Cir. 1989).

Petitioner's speedy trial claim fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*,

146 F.3d at 327-28. There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner. *Id.; see also Brown*, 498 F.3d at 531.

Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. *Burns*, 328 F. Supp. 2d at 722. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.*, 507 F.3d 949, 954 (6th Cir. 1975). Any prejudice to petitioner from his pre-trial incarceration "is too slight to constitute an unconstitutional denial of his right to a speedy trial," in light of the fact that the other *Barker* factors do not support petitioner's speedy trial claim. *See Wells v. Petsock,* 941 F.2d 253, 259 (3rd Cir. 1991).

Furthermore, petitioner is not entitled to habeas relief on his claim that his right to a speedy trial was deprived because he was brought to trial in violation of Michigan's 180 day rule set forth in Mich. Comp. Laws § 780.131 and M.C.R. 6.004(d) because it is essentially a state law claim. *See Burns v. Lafler,* 328 F. Supp. 2d at 722. A violation of a state speedy trial law by state officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition. *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Wells v. Petsock*, 941 F.2d 253, 256 (3rd Cir. 1991)). Petitioner's claim that the State of Michigan violated its own 180 day rule would not entitle him to habeas relief. *Id.*

**H. Claim # 8. The sentencing claims.**

Petitioner raises several challenges to his sentence.

Petitioner first argues that the trial judge miscored his sentencing guidelines.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is non-cognizable on federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016).

Petitioner next contends that the trial court judge erred by considering factors beyond what was admitted to by petitioner or which were found by a jury beyond a reasonable doubt, when scoring the sentencing guidelines variables.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 ( 2013). *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.

The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial, *see People v. Lockridge,* 498 Mich. 358, 870 N.W.2d 502 (Mich. 2015). The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* 498 Mich. at 391-92, 870

N.W.2d at 520-21. The remedy under *Lockridge* is a remand for the trial court judge to determine if he would impose the same sentence even without the guidelines. *Lockridge*, 498 Mich. at 397. This remedy is based on the procedure adopted by the Second Circuit in *United States v. Crosby*, 397 F.3d 103, 117–118 (2nd Cir. 2005). *See Lockridge*, 498 Mich. at 395–396.

The Michigan Court of Appeals on petitioner's initial appeal agreed that petitioner's case should be remanded to the trial judge for a determination of whether he would have imposed a different sentence without the sentencing guidelines. The trial court judge, on remand, stated on the record that he would have imposed the same sentence. Petitioner's *Lockridge* claim is moot. *See Hill v. Sheets,* 409 F. App'x 821, 824-25 (6th Cir. 2010)(The Michigan Supreme Court's decision to vacate petitioner's life sentence and order his re-sentencing in conformance with the United States Supreme Court's holdings in *Miller v. Alabama* and *Montgomery v. Louisiana* moots petitioner's sentencing claims).

Petitioner appears to argue that the judge during the *Lockridge* remand should have conducted a full re-sentencing or consider a sentence reduction. In *Reign v. Gidley,* 929 F.3d 777 (6th Cir. 2019), the Sixth Circuit held that the habeas petitioner was not entitled to habeas relief based on his claim that the state trial court judge failed to conduct a re-sentencing hearing after *Lockridge* had been decided, but had instead denied petitioner's motion to correct the sentence by stating that he would have imposed the same sentence even if the guidelines had merely been advisory at the time of sentencing. *Id.* at 780. The Sixth Circuit upheld the denial of habeas relief to the petitioner in *Reign* because the United States Supreme Court had yet to clearly establish what type of remedy would be appropriate for cases in which a mandatory sentencing guidelines regime was invalidated and made advisory. *Id.,* at 781-82. The Sixth Circuit noted that different circuits had reached different conclusions about the type of remedy that should be imposed in such

cases, showing that fair-minded jurists could disagree about the propriety of a *Crosby* or *Lockridge* style remand, thus, habeas relief was not appropriate. *Id.* at 782-83. Petitioner is not entitled to relief on his eighth claim.

## I. Claims # 9 and # 12. The right to present a defense claims.

In his ninth and twelfth claims, petitioner alleges that he was denied the right to present a defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show

that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

Petitioner in his ninth claim argues that he was denied his right to present a defense because the trial judge refused to allow him to undergo testing for STDs and obtain an expert report stating that it is likely that, if the assault had actually occurred, an STD would have been transmitted to the victim.

The Michigan Court of Appeals rejected petitioner's claim as follows:

Based on our review of the record, the trial court did not deny defendant the ability to undergo additional testing or obtain an expert. Rather, the trial court told defense counsel to find an expert to perform the testing he was seeking, and the trial court stated that it would assist with the cost. On September 3, 2014, defense counsel informed the trial court that he was unable to locate a proper expert and requested an adjournment, but the trial court denied the request. However, there is no evidence that defendant would have been able to obtain an expert to perform "the appropriate testing" even if he had been given additional time. Thus, the trial court did not abuse its discretion, and defendant was not denied the right to present a defense.

Moreover, any error was harmless beyond a reasonable doubt. Again, defendant only speculates that he could have found an expert to testify that he had an STD and that it is likely that the victim would have contracted the STD if the assault had actually occurred. With regard to HPV in particular, one of defendant's previous attorneys admitted on the record that a medical director at the Macomb County Health Department informed him that HPV would not necessarily have transferred to the victim and could also take years to manifest. Thus, it cannot be concluded that the testing sought by defendant would have produced exculpatory evidence that would have changed the result of the trial.

*People v. Farris*, 2016 WL 1125920, at *22 (internal citation omitted).

Petitioner has made no showing that he had an expert who would testify that if petitioner had an STD that the victim would necessarily have contracted it had the assault actually occurred. Petitioner would not be entitled to habeas relief on a right to present a defense claim that is merely speculative. *See e.g. Berry v. Palmer*, 518 F. App'x 336, 342 (6th Cir. 2013).

Petitioner in his twelfth claim argues that the trial court abused its discretion by denying his motion for a photo body lineup, in which the victim would be asked to pick out a photograph of petitioner's penis from a photographic lineup of penises.

The Michigan Court of Appeals rejected the claim as follows:

> In this case, eyewitness identification was not a material issue because the victim knew the perpetrator and there was also DNA evidence linking defendant to the crimes. There was also no reasonable likelihood of mistaken identification that a photo body lineup would tend to resolve because it is highly likely that the victim would have been unable to identify defendant's private area in a photographic lineup. Defendant does not even argue that he has an identifiable characteristic that the victim would have observed. Finally, even if the trial court abused its discretion in denying defendant's request, any error was harmless because even if the victim had been unable to identify defendant's genitals, the other evidence against him was overwhelming.

*People v. Farris*, 2016 WL 1125920, at *24.

Petitioner is not entitled to habeas relief because the Michigan Court of Appeals' decision was reasonable. *See e.g. State v. Tyler*, 587 S.W.2d 918, 932 (Mo. Ct. App. 1979)(court properly rejected defendant's "startling proposition" that there be a pretrial photographic lineup of penises, including his own, to be viewed by victim. "Defendant did not suggest, nor did the victim that his sexual organ had any distinctive features which would have impressed it upon the visual memory and which would have made it distinguishable from others. The suggested procedure would have had no value and the court correctly denied the motion. Defendant cites us to no cases which remotely support his position."). Petitioner is not entitled to relief on his ninth and twelfth claims.

**J. Claim # 10. The preliminary examination claims.**

Petitioner alleges various defects with the preliminary examination.

Petitioner has failed to state a claim upon which habeas relief can be granted. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). There is no federal constitutional right to a preliminary examination. *United*

*States v. Mulligan*, 520 F.2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico,* 253 F. App'x 521, 525-26 (6th Cir. 2007).

In addition, a guilty verdict renders harmless any error in the charging decision. *See United States v. Mechanik,* 475 U.S. 66, 73 (1986). Any defects at petitioner's preliminary examination would be harmless error in light of petitioner's subsequent conviction. *See Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012).

**K. Claim # 11. The insufficiency of evidence claim.**

Petitioner lastly challenges the sufficiency of evidence to convict.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of

that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner contends that the evidence was insufficient to convict because the victim's testimony was uncorroborated.

The testimony of a single, uncorroborated prosecution witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *Brown v. Davis,* 752 F.2d 1142, 1144-1145 (6th Cir. 1985). The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's sexual assault conviction. *See United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000)(citing *Gilbert v. Parke,* 763 F.2d 821, 826 (6th Cir. 1985)). The victim's testimony that petitioner sexually penetrated her and that she was under the age of sixteen was sufficient to sustain petitioner's conviction, notwithstanding the alleged lack of evidence to corroborate the victim's testimony. *See e.g. O'Hara v. Brigano,* 499 F.3d 492, 500 (6th Cir. 2007). Petitioner is not entitled to relief on his final claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams*, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V. **ORDER**

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be **DENIED** leave to appeal *in forma pauperis*.

Dated: April 1, 2020

s/Sean F. Cox
Sean F. Cox
U. S. District Judge